## In re HOTEL NEVADA CORPORATION, a Nevada Corporation, Debtor.

### Bankruptcy No. BK-S-85-382.

United States Bankruptcy Court, D. Nevada.

June 24, 1987.

Frank A. Ellis, Las Vegas, Nev., for debtor.

James R. Chamberlain, Las Vegas, Nev., for Nevada Gaming Control Bd.

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Chief Judge.

Debtor, Hotel Nevada Corporation, filed for relief under Chapter 11 of the Bankruptcy Code on March 21, 1985. On June 18, 1986 the Debtor voluntarily converted its case to a Chapter 7 proceeding and a trustee was appointed to administer the estate.

On November 5, 1986, the Nevada Gaming Commission and the State Gaming Control Board filed a Renewed and Amended Application for the Payment of Administrative Expenses in the amount of $118,464.54 for taxes and fees incurred by the estate.[1] On December 19, 1986, the Nevada Department of Taxation filed a Request for Payment of Administrative Expenses in the amount of $50,667.15 for Chapter 11 taxes, penalties, and interest.

At the hearing on the two requests, none of the parties disputed that the taxes and fees requested by the State were entitled to administrative expense status. However, the Court raised the question of whether 11 U.S.C. section 502(i) converts the taxes and fees into pre-petition claims, notwithstanding the fact that they were incurred by the Debtor's Chapter 11 estate.

## DISCUSSION

11 U.S.C. section 503(b)(1)(B) includes as an administrative expense:

1. A prior application had been filed by the same parties on May 16, 1986 but had been voluntar-

"Any tax—(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) ..."

The statute is clear in providing that any tax incurred by the estate, other than one specified in section 507(a)(7), is entitled to administrative expense status. The exception for section 507(a)(7) taxes merely excludes taxes incurred prior to the filing of the petition. Thus, under section 503(b) post-petition taxes are entitled to administrative expense status. *See In re General Polymerics Corp.*, 54 B.R. 523, 524–525 (Bankr.D.Conn.1985).

However, a literal reading of section 502(i) appears to render section 503(b) meaningless, because the section seems to relegate most post-petition tax claims to pre-petition status. Section 502(i) provides as follows:

"A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(7) of this title shall be determined ... the same as if such claim had arisen before the date of the filing of the petition."

The trustee argues that section 502(i) converts taxes incurred by the estate to pre-petition status as long as they are taxes *of the kind* listed in section 507(a)(7), notwithstanding the fact that they were not incurred pre-petition as is required by section 507(a)(7). The Commission and the Board argue that 502(i) only affects those tax claims *actually entitled* to pre-petition status, but which are not assessed or payable until after the petition is filed.

The few courts that have dealt with the issue have noted that the legislative history of section 502(i) provides little assistance in clearing up the ambiguity. *See, e.g., In re Carlisle Court, Inc.*, 36 B.R. 209, 215 n. 23 (Bankr.D.D.C.1983); *In re Terminals Unlimited, Inc.*, 63 B.R. 419, 421 n. 7 (Bankr. D.Md.1986). In *Carlisle* the court was faced with the issue of whether claims for real property taxes that both "arose" and were assessed post-petition should be deemed pre-petition priority claims under section 502(i). The court held that the

ily withdrawn in order to give the new Chapter 7 trustee the opportunity to respond.

claim had to be for a tax *actually entitled* to priority under section 507(a)(6) [now section 507(a)(7)] before it would be treated as a pre-petition claim. Since section 507(a)(6)(B) only granted priority to a claim for property taxes assessed *prior* to the commencement of the case, the court held that section 502(i) did not apply to a claim for property tax assessed after the filing of a Chapter 11 petition. The court noted:

> If section 502(i) is read to relegate all post-petition tax claims of the kind described in section 507(a)(6) to pre-petition status ... the statutory language in section 503(b), *excluding* taxes of a kind specified in section 507(a)(6) and denying them administrative priority, becomes meaningless and would appear to be in clear conflict with section 503(b)(1)(B).

> Because section 502(i) relates not only to a tax claim that arises after commencement of a case but also is "... for a tax entitled to priority under section 507(a)(6) ...", it would seem logical and consistent with principles of statutory construction, which construe statutes *in pari materia* when relating to the same subject matter, to construe section 502(i) to deal solely with tax claims entitled to priority under section 507(a)(6). This section, specifically section 507(a)(6)(B), grants priority only to property tax claims which are assessed *before* commencement of the case. Accordingly, to the extent that property tax claims are assessed *after* commencement of the case and are incurred by the estate within the intended language of section 503(b)(1)(B), such taxes are not deemed to be pre-petition tax claims by operation of section 502(i) and are not afforded pre-petition status. These taxes are administrative claims as defined under section 503(b) and hence are entitled to distributive priority under section 507(a)(1) of the Code.

*Id.* at 217–18 (emphasis in original) (footnotes omitted); *see also In re St. Louis Freight Lines, Inc.*, 45 B.R. 546, 549 n. 5 (Bankr.E.D.Mich.1984); *In re Razorback Ready-Mix Concrete Co.*, 45 B.R. 917, 925 (Bankr.E.D.Ark.1984); *but see In re New England Carpet Co. Inc.*, 26 B.R. 934

(Bankr.D.Vt.1983) (denying administrative priority to certain water rents which were in the form of a property tax.)

In accordance with the weight of authority, this Court is persuaded that section 502(i) was intended to deal with situations where a tax is *incurred* prior to the filing of the petition but is not assessed or payable until after the petition has been filed. Since the taxes and fees owing the Board and Commission were incurred after the filing date, they are entitled to administrative status.

## SECTIONS 348(d) AND 503(b)

█ The trustee also argues that sections 348(d) and 503(b)(1)(B) operate to convert the administrative expenses of a debtor's Chapter 11 case into pre-petition claims, upon conversion to Chapter 7. This argument, however, ignores the plain language of section 348(d) which provides:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, *other than a claim specified in section 503(b) of this title*, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition. (emphasis added)

Clearly then, section 348(d) does not operate to convert a debtor's Chapter 11 administrative expense into a pre-petition claim upon conversion.

## CONCLUSION

The Court concludes that section 502(i) does not convert a post-petition tax claim of the type specified in section 507(a)(7) into a pre-petition claim. Furthermore, sections 348(d) and 503(b) do not operate to convert a creditor's Chapter 11 administrative claim to a pre-petition claim upon conversion to Chapter 7. Since the taxes and fees sought by the Board, the Commission and the Department of Taxation were incurred by the estate, they are entitled to administrative status.

Judgment will be entered accordingly.