[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 20, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16039

_____

D. C. Docket No. 03-01479-CV-T-23-MSS
BKCY No. 90-10016-BKC-8G

In Re: CELOTEX CORPORATION,

Debtor.

_____

FIBREBOARD CORP.,

Plaintiff-Appellant,

versus

CELOTEX CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 20, 2006)**

Before BIRCH and BLACK, Circuit Judges, and MILLS,[*] District Judge.

PER CURIAM:

Fibreboard Corp. appeals the district court's judgment for Celotex. The district court affirmed the bankruptcy court's determination that Fibreboard could not bring a subrogation claim against Celotex in bankruptcy proceedings under either the Bankruptcy Code or state law. We hold Fibreboard is not entitled to subrogation for its payment of judgments on which both Celotex and Fibreboard were jointly and severally liable. Celotex and Fibreboard were each primarily liable on the judgments as a result of joint and several liability. Fibreboard's release from the judgments constituted consideration because it was found jointly and severally liable, and therefore primarily liable, for the entire amount of the judgments. We uphold the district court's affirmance of the bankruptcy court's grant of summary judgment for Celotex.

## I. BACKGROUND

In 1989, Celotex and Fibreboard were found jointly and severally liable for several asbestos personal injury cases. In 1990, Celotex filed a petition for Chapter 11 bankruptcy. To protect its assets in order to satisfy the judgments,

_____

[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

2

Celotex filed supersedeas bonds in the appeals of the adverse judgments. Ultimately, Fibreboard paid the entire amount of the joint and several liability judgments and the judgment creditors released their claims against Fibreboard and assigned their claims against Celotex to Fibreboard.

Fibreboard asserted a subrogation claim in the bankruptcy court to recover Celotex's share of the joint and several liability judgments payments from the supersedeas bonds. The bankruptcy court granted summary judgment to Celotex after finding that under both the Bankruptcy Code and state law, Fibreboard was not entitled to subrogation because it was primarily liable for the judgments. The district court affirmed the grant of summary judgment for Celotex, and Fibreboard appealed.

## II. STANDARD OF REVIEW

We review a bankruptcy court's entry of summary judgment *de novo*. *Gray v. Manklow* (*In re Optical Technologies, Inc.*), 246 F.3d 1332, 1334-35 (11th Cir. 2001).

## III. DISCUSSION

A.    Bankruptcy Code Claim

Fibreboard asserts a subrogation claim under 11 U.S.C. § 509 for Celotex's share of the judgments on which both were jointly and severally liable and which

3

Fibreboard paid.[1]  At issue is whether a co-defendant which pays the full amount

of a joint and several liability judgment is excluded from seeking subrogation by

§ 509(b).

Section 509 outlines the subrogation rights under the Bankruptcy Code.[2]

Section 509(a) grants the right of subrogation to parties who are either liable with

the debtor on a claim or act as surety on a claim, and pay that claim.  11 U.S.C.

§ 509(a).  Eligible parties are subrogated to the extent they pay the claim.  *Id.*

---

[1]We note that Fibreboard did not bring a claim for contribution but elected to bring only this subrogation claim.  *See Celotex Corp. v. Allstate Ins. Co.* (*In re Celotex*), 289 B.R. 460, 462 (Bankr. M.D. Fla. 2003).

[2] Section 509 states:
"(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that –
        (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is –
                (A) allowed under section 502 of this title;
                (B) disallowed other than under section 502(e) of this title; or
                (C) subordinated under section 510 of this title; or
        (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise."

4

However, § 509(a) is limited by §§ (b) and (c). Section 509(b)(1) excludes parties whose reimbursement or contribution claims are allowed, disallowed, or subordinated under other sections of the Code. Also, if a party receives consideration for such a payment, that party is excluded by § 509(b)(2) and may not bring a subrogation claim to recover that payment.

Fibreboard argues that § 509 allows subrogation claims even where the party asserting the claim is primarily liable with the debtor for the claim it asserts. Fibreboard contends this statutory right of subrogation is separate and distinct from the doctrine of equitable subrogation under the common law and the statute does not preclude parties that are primarily liable on the debt from seeking subrogation.[3] *See Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1005 (11th Cir. 2004). Fibreboard asserts it may bring this subrogation claim even though it was jointly and severally liable on the judgments it paid as a result of the personal injury judgments against it and Celotex.

Every court that has expressly applied § 509(b)(2) has held it excludes those who are primarily liable for the debt from subrogation because they received consideration for paying the debt. *See Cornmesser v. Swope (In re Cornmesser's*

---

[3]It is unnecessary for this Court to decide to what extent the Bankruptcy Code codifies any principles of equitable subrogation not expressed in the language of the statute.

5

*Inc.*), 264 B.R. 159, 163 (Bankr. W.D. Pa. 2001); *In re Valley Vue Joint Venture*, 123 B.R. 199, 205 (Bankr. E.D. Va. 1991); *Patterson v. Yeargin* (*In re Yeargin*), 116 B.R. 621, 622 (Bankr. M.D. Tenn. 1990); *In re Russell*, 101 B.R. 62, 65 (Bankr. D. Ark. 1989).[4] Courts that have allowed subrogation claims by parties jointly and severally liable on the debt have done so where a separate agreement transfers the obligation to pay the claim to the debtor.[5] In those cases, the party seeking subrogation was not excluded by § 509(b)(2) because the debtor, rather than the party seeking subrogation, received consideration for release from his obligation.

---

[4]The Seventh Circuit reached a contrary conclusion in *In re Bugos* but did not discuss § 509(b)(2) of the Bankruptcy Code. 760 F.2d 731, 735 (1984). The court allowed a father's subrogation claim for payments made on behalf of his debtor son on a contract for a farm where they were co-tenants. "In sum, because plaintiff was jointly liable on the real estate contract, he is entitled to subrogation for his remittance . . . ." *Id.* The court discussed the "purely equitable" nature of subrogation but made no reference to § 509(b)(2) or whether the father received consideration for paying his son's share. *Id.* at 734.

[5]The Eighth Circuit allowed the subrogation claim of a woman who was jointly and severally liable as a co-signer of promissory notes with her ex-husband. *Feldhahn v. Feldhahn*, 929 F.2d 1351, 1353-55 (8th Cir. 1991). The woman brought the claim after the divorce once she had discharged the promissory notes transferred to her ex-husband as part of the divorce decree. *Id.* at 1354. In this case, the court specifically noted the woman's claim was not exlcuded by § 509(b)(2) because she did not receive consideration for discharging her ex-husband's debt. *Id.* at 1354 n.5. In *Cooper v. Cooper* (*In re Cooper*) a bankruptcy court followed *In re Bugos* to allow the subrogation claim of an ex-wife who paid the couple's joint tax liability. 83 B.R. 544, 547 (Bankr. C.D. Ill. 1988) Like *Feldhahn*, the liability was the ex-husband's obligation under the divorce decree so it was the ex-husband, not the woman claiming subrogation, who received the consideration for the payment. *Id.*

The majority of bankruptcy courts that have discussed § 509(b)(2) agree it "embodies the general principle that subrogation is not available to a party who satisfies a debt for which that party was primarily obligated." *Cornmesser v. Swope* (*In re Cornmesser's Inc.*), 264 B.R. 159, 163 (Bankr. W.D. Pa. 2001)(citing *In re Russell*, 101 B.R. 62, 65 (Bankr. D. Ark. 1989)).[6]

The bankruptcy court in the Southern District of New York explained the statute from a slightly different perspective. "[T]he relevant question in the subrogation context is not simply whether the party was directly liable, but rather whether its payment was used to satisfy *another's* obligation. The question is sometimes conceived as one of 'ultimate' liability-a question that can be answered by determining which of the liable parties received the consideration." *Pandora Indus. Inc. v. Paramount Comm. Inc.* (*In re Wingspread Corp.*), 145 B.R. 784, 790 (S.D.N.Y. 1992).[7]

---

[6] "[Section 509(b)(2)] is a statutory expression of the general principle of equitable subrogation that the right of subrogation is not available to a party who satisfies an indebtedness for which he is ultimately and primarily obligated." *In re Russell*, 101 B.R. 62, 65 (Bankr. D. Ark. 1989) (citations omitted); *see also In re Valley Vue Joint Venture*, 123 B.R. 199, 205 (Bankr. E.D. Va. 1991) ("Section 509(b)(2) correctly captures the purpose of the 'primary liability' limitation under general equitable principles."); *Patterson v. Yeargin* (*In re Yeargin*), 116 B.R. 621, 622 (Bankr. M.D. Tenn. 1990) ("This exception codifies the rule that subrogation is not available to a party who satisfies an obligation for which he is primarily liable.").

[7] *See also Patterson v. Yeargin* (*In re Yeargin*), 116 B.R. 621, 622 (Bankr. M.D. Tenn. 1990) (stating § 509(b)(2) "limits subrogation to the extent that the party asserting the right received consideration for the claim held by the creditor"); *In re Trasks' Charolais*, 84 B.R. 646,

We conclude that § 509(b)(2) precludes subrogation claims under the Bankruptcy Code by those who receive consideration for payment on the claim. "The statute looks to the relationship between the debtor and the codebtor in terms of which one received the consideration giving rise to the joint obligation." *Cooper v. Cooper* (*In re Cooper*), 83 B.R. 544, 547 (Bankr. C.D. Ill. 1988) (footnote omitted). In other words, those who are primarily liable for the entire debt and therefore receive the consideration for payment of the whole amount of the claim, may not bring subrogation claims to recover the payment.

Even if the Code does not codify the common law right of subrogation but remains entirely independent and distinct, Fibreboard fails to show why its subrogation claim is not excluded by § 509(b). It offers no proof to refute its receipt of consideration for its payment to the judgment creditors to remove it from the § 509(b) exclusion.

On the contrary, Fibreboard did receive consideration for its payment of the joint and several judgments. Fibreboard was primarily liable for the entire amount

---

651 (Bankr. D.S.D. 1988) ("The statute looks at which entity, principal debtor or subrogee, received the consideration giving rise to the obligation.").

of the judgments; its release from the judgments constituted consideration and excludes Fibreboard's subrogation claim under § 509(b).[8]

### B. State Law Claim

Fibreboard argues that even if the Bankruptcy Code excludes its claim, Florida law entitles it to an equitable subrogation claim. The Florida Supreme Court has held equitable subrogation appropriate where "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was *not primarily liable* for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." *Dade County Sch. Bd. v. Radio Station WQBA*, 731 So.2d 638, 646 (Fla. 1999) (emphasis added). "Subrogation . . . is not available to a party who pays his own debt." *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1005 (11th Cir. 2004) (citing *Dade County Sch. Bd* in refusing to allow an equitable subrogation claim by a party which was already contractually obligated to pay the debt).

---

[8] Fibreboard argues it was only secondarily liable for Celotex's share of the judgment and therefore not excluded from subrogation for that portion of its payment. The judgment creditors for the joint and several liability judgment could recover the entire amount from either party. As a result, Fibreboard was primarily liable for the entire amount of the judgment.

As a co-defendant with joint and several liability, Fibreboard was primarily liable for the judgments it paid. Fibreboard's payment of the debt does not create any rights under Florida's law of equitable subrogation.

## IV. CONCLUSION

Under § 509(b)(2) of the Bankruptcy Code and common law principles of subrogation, Fibreboard is precluded from subrogation because Fibreboard was primarily liable for the debt at issue. We affirm the district court's order affirming the bankruptcy court.

**AFFIRMED.**